OPINION OF THE COURT
Sara P. Schechter, J.
Respondent in this proceeding to adjudicate paternity of a 16-year-old boy had previously moved to dismiss the proceeding as barred by the Statute of Limitations set forth in subdivision (a) of section 517 of the Family Court Act. Petitioner alleges that respondent has acknowledged paternity by furnishing support for the child, thereby establishing an exception to the Statute of Limitations. Respondent’s motion to dismiss was denied due to “issues of fact * * * which must be resolved at a hearing.” (Decision of Eastman, J., Jan. 26, 1983.)
When the matter came on for trial on June 28, 1983, respondent renewed his motion and was granted a pretrial *987 hearing on the issue of whether he had “furnished support” within the meaning of section 517 of the Family Court Act. It is conceded that respondent never acknowledged paternity in writing.
Petitioner also asserts that section 517 of the Family Court Act is unconstitutional as violative of the equal protection clause of the Federal Constitution. Petitioner contends that the trial on the merits should go forward, therefore, regardless of whether petitioner has established that respondent furnished support. The Attorney-General was notified of the constitutional challenge and has declined to participate at this stage of the proceeding.

The Support Exception to the Statute of Limitations

The issue before the court is whether petitioner has established by clear and convincing evidence that respondent has acknowledged paternity by furnishing support for the child, (Matter of Vicki B. v David H., 57 NY2d 427.)
We must conclude that petitioner has not carried this evidentiary burden to establish an exception to the Statute of Limitations. Except for the final payment to petitioner of $200, the purpose of which was unspecified, respondent made no payments which were substantial in amount. The only payments which he made on a fairly regular basis were for the child’s allowance of $5 to $10 a month. Although giving a child allowance is in our society an almost exclusively parental function, an allowance of $5 to $10 monthly is clearly not for the sustenance of the child. The child is not expected to feed, clothe or shelter himself from such a sum. In some circumstances an allowance might properly be said to constitute an element of support because of its educational value. In the absence of evidence that respondent has made any regular, consistent or substantial contributions toward the basic items of support, however, the court cannot conclude that the payment of allowance constitutes a clear and unequivocal acknowledgment of paternity. (Matter of Wong v Beckford, 28 AD2d 137, 138.)*

*988
The Equal Protection Issue

The petition before the court was filed on October 13, 1982, at which time the child was 15 years old. On June 6, 1983 the United States Supreme Court decided the case of Pickett v Brown (462 US_,51 USLW 4655), which decision invalidated a Tennessee two-year Statute of Limitations for paternity proceedings very similar to the New York statute, subdivision (a) of section 517 of the Family Court Act. On June 17, 1983, the Honorable David Gilman, issued a decision in Matter of Esther W. v Melvin H. (119 Misc 2d 690) declaring the New York statute unconstitutional based on the Supreme Court’s reasoning in Pickett v Brown (supra). Although not published until July 1, 1983 in the New York Law Journal (p 12, col 6), this decision had been accepted for publication and copies of the slip opinion were made available to counsel prior to the calling of the case into court on June 28, 1983.
On June 21, 1983, however, chapter 305 of the Laws of 1983 became effective, which amended subdivision (a) of section 517 of the Family Court Act by lengthening to five years the period within which proceedings may be brought to establish paternity. The statute is otherwise unchanged.
Prior to the commencement of the scheduled hearing on June 28, 1983, petitioner’s attorney asserted that subdivision (a) of section 517 of the Family Court Act both in its original and newly amended forms, contravenes the equal protection clause of the Fourteenth Amendment to the United States Constitution.
The law is not settled as to whether an amendment lengthening a Statute of Limitations should be given retroactive effect. Section 59 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1) expresses the power of the Legislature to limit actions thus: “When reasonably exercised, the Legislature has the power to change laws relating to limitations of actions as by shortening limitations in pending cases or reviving a right of action previously barred.”
The commentary following this section (McKinney’s Cons Laws of NY, Book 1, Statutes, p 130) indicates that the legislative power to revive a right of action already barred arises from the fact that “the running of a statute of *989 limitations does not discharge an obligation, but merely deprives the holder of access to the courts”. A clear legislative intent should be evident, however, for such an extreme exercise of legislative power. (Hopkins v Lincoln Trust Co., 233 NY 213.)
The court finds such a clear statement of intent concerning the amendment to section 517 of the Family Court Act in the sponsors’ memorandum in support of the bill, which states that the purpose of the bill is “to establish a constitutional statute of limitations for the initiation of paternity proceedings.” Although there is no reference in the memorandum to Pickett v Brown (supra) the case of Mills v Habluetzel (456 US 91) is discussed under the heading of “justification”. The memorandum states that the decision of the Supreme Court in Mills “indicates that the court would also hold [the two-year] period to be unconstitutional, were it to rule upon this statute.”
By moving to amend the statute prior to an appellate ruling declaring subdivision (a) of section 517 of the Family Court Act unconstitutional, the Legislature clearly indicated its preference to revive rights of action previously barred rather than have the constitutionality of section 517 of the Family Court Act litigated. Likewise, respondent in the instant case, without conceding the unconstitutionality of the two-year version of the statute, has raised no objection to the application of the amended statute to the case at bar.
With reference to the constitutionality of subdivision (a) of section 517 of the Family Court Act prior to its amendment, this court is in complete agreement with the reasoning and the result in Matter of Esther W. v Melvin H. (supra). The issue now before the court, therefore, is whether the amendment lengthening the period to five years cures the statute’s constitutional deficiencies. We hold that it does not.
This court approaches the issue of the statute’s constitutionality with reluctance, with full appreciation of its presumptive constitutionality (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subds a, b), and of the limited power of trial courts to strike down a statute. (Zubli v Community Mainstreaming Assoc., 102 Misc 2d 320, affd *990 74 AD2d 624, mod on other grounds 50 NY2d 1024; Comiskey v Arlen, 55 AD2d 304, affd 43 NY2d 696.)
The trial court is mandated to determine the constitutionality of a statute, however, where the consequences may be severe and the damage irreparable and where the conclusion of unconstitutionality is inescapable. (Zubli v Community Mainstreaming Assoc., supra; People v Darry P., 96 Misc 2d 12.)
Here, irreparable harm may result from delay while awaiting appellate resolution of this issue in that the paternity action would abate upon the death of respondent (Matter of Douglas v Miller, 55 Misc 2d 303, affd 31 AD2d 889), thus, permanently depriving the child of inheritance rights (EPTL 4-1.2), and the right to claim Social Security and other benefits for which the child would be eligible through respondent if paternity were established.
In light of Pickett v Brown (supra) the conclusion as to the amended statute’s unconstitutionality is inescapable. The court in Pickett followed the Mills decision in utilizing a two-pronged test to determine whether the statute in question denied illegitimate children the same protection under the law which is accorded legitimate children. The court asked first whether the limitations period is sufficiently long to provide a reasonable opportunity to those with an interest in illegitimate children to bring suit on their behalf.
In this regard the five-year limitation is a substantial improvement over the two years previously permitted. Although the deterrent factors mentioned by Justice O’Connor in her concurring opinion in Mills (supra) — continuing affection for the child’s father, a desire to avoid disapproval of family and community, and emotional strain attendant upon the birth of an illegitimate child — may in some cases persist even more than five years after the child’s birth, it is likely that a substantial majority of potential petitioners would find five years an adequate amount of time in which to institute legal proceedings.
Respondent persuasively argues that by the time a child is five years old many mothers have returned to work and, therefore, have an accurate picture of their financial sitúa *991 tians. Relatives who will help have stepped forward, and the school-age child is less dependent on the mother.
It is the second related requirement which the newly amended statute fails to satisfy, that is, that the time limitation be substantially related to the State’s interest in avoiding the prosecution of stale or fraudulent claims. The Pickett decision (supra) stressed two aspects of the Tennessee statutory scheme which fatally undermined the State’s contention that the differing treatment accorded to illegitimate children was substantially related to this interest. Both are also present in the New York statutory scheme.
First, the Supreme Court noted the distinction between the Statute of Limitations for the Commissioner of Social Services, in Tennessee 18 years. Section 517 as amended retains a substantial distinction, 10 years for the Commissioner of Social Services as against the 5 years for the mother or child not on public assistance. As the Supreme Court stated, “There is no apparent reason why claims filed on behalf of illegitimate children who are receiving public assistance when they are more than two years old would not be just as stale, or as vulnerable to fraud, as claims filed on behalf of illegitimate children who are not public charges at the same age.” (462 US_,_, 51 USLW 4655, 4659.) The fact that the discrepancy is smaller in New York than under the Tennessee statute does not make the distinction any more rational.
Second, Tennessee, like New York (CPLR 208), tolls most actions during a child’s minority. Although section 517 of the Family Court Act is tolled during the minority of the mother, the Supreme Court clarified that “the important point” is that the Tennessee paternity Statute of Limitations, like the New York statute, is not tolled during the child’s minority. (462 US, at p_, n 15, 51 USLW, at p 4659, n 15.) That the limitation period is five years rather than two fails to account for the fact that the legislative concern for the problems of proof is so much greater in paternity cases than in other types of civil proceedings, particularly as the petitioner in a paternity proceeding must meet the higher “clear and convincing and entirely satisfactory” evidentiary standard. (Matter of Dorn “HH” v Lawrence “II”, 31 NY2d 154.)
*992 Finally, it must be noted that, in addition to the high burden of proof, the New York statutory scheme provides many other safeguards for the rights of respondents in paternity proceedings: the previously discussed difficulty in establishing the tolling of the statute, unlike the Tennessee statute which can be tolled without proof of regular or substantial support; the respondent’s right to assigned counsel (Family Ct Act, § 262, subd [a], par [viii]); the right to have blood-grouping tests ordered upon request (Family Ct Act, § 532); and the right to have the results of the tests admitted into evidence (Family Ct Act, § 532). Collectively these safeguards mitigate possible injustice to a respondent caused by a delay in the initiation of the proceeding.
Subdivision (a) of section 517 of the Family Court Act, as amended by chapter 305 of the Laws of 1983, having been found to bear no substantial relationship to the legitimate State interest in preventing the litigation of stale or fraudulent claims, is declared unconstitutional.
Respondent’s motion to dismiss is denied, and the matter is set down for hearing on the merits in Part VI of this court on September 28, 1983.

 For purposes of publication, the court’s findings of fact and further analysis with respect to the issue of furnishing support has been deleted from this opinion.